UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00241-RSE

**CHELSEA H.**                                                                                                           **PLAINTIFF**

VS.

**MARTIN O'MALLEY,**[1]
*Commissioner of Social Security*                                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Chelsea H.'s[2] ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 14; DN 15). The Commissioner has responded in a Fact and Law Summary. (DN 20). Claimant has filed a reply brief. (DN 21). The parties have consented, under 28 U.S.C. § 63(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

### I. Background

Claimant applied for disability insurance benefits under Title II on February 24, 2021. (Transcript, hereinafter "Tr.," 154-55). In her application, Claimant alleged disability beginning on June 1, 2019, due to traumatic brain injury, depression, anxiety, loss of the ability to learn and/or retain information, loss of balance in an episodic manner, unexpected blurred vision,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced by first name and last initial in opinions issued.

difficulty thinking or concentrating, vertigo, severe headaches, and back and neck pain. (Tr. 169). Her application was denied on initial review and again on reconsideration. (Tr. 76, 85). Administrative Law Judge Davida H. Isaacs ("ALJ Isaacs") conducted a hearing in Lexington, Kentucky on April 28, 2022. (Tr. 45-74). Claimant attended the hearing by telephone with her non-attorney representative.[3] (Tr. 47). An impartial vocational expert ("VE") also attended the hearing. (Tr. 45).

During the hearing, Claimant testified to the following. Claimant currently lives with her husband and children. (Tr. 56). At her previous job in 2019, she experienced dizziness which forced her to sit frequently. (Tr. 53). Claimant met with a neurosurgeon who recommended that she take off two weeks of work, and her employer ultimately terminated her when she continued to take leave due to her medical conditions. (*Id.*). Claimant testified that her headaches and dizziness are the primary issues that prevent her from working. (Tr. 52). She stated that she becomes dizzy several times a day, even while sitting. (Tr. 58, 64). Claimant reported that her dizzy spells are episodic, and she has no way of predicting when she will experience one. (Tr. 58). She testified that her dizzy spells have caused her to fall down the stairs at her house three or four times. (Tr. 64).

Claimant stated that she experiences headaches at least four to five times per week. (Tr. 53). When she has a headache, Claimant reported that her vision is blurry, her eyes hurt to open, and she cannot read. (Tr. 53-54, 65). She goes into a dark room and lays down for several hours. (Tr. 53). She testified that her headaches make it unsafe for her to drive. (Tr. 54). She stated that the last time she had driven, she blacked out while she was in traffic. (Tr. 55). If she must drive, the farthest she travels is to take her son to the bus stop at the end of the street. (Tr. 56). Although

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 141).

2

she has been prescribed medication for her headaches, Claimant testified that they only occasionally help with her symptoms. (Tr. 53). Side effects Claimant reported from her medications included drowsiness and dizziness. (Tr. 60).

Claimant also testified as to her memory issues and anxiety. She reported that her husband reminds her to take her medications. (Tr. 59). She also stated that, when her son was sick, she accidentally gave his medications to her daughter, and Claimant had to call poison control. (*Id.*). Due to anxiety, Claimant testified that she finds it difficult being alone or around crowds. (Tr. 66). Claimant reported that she is rarely home alone with her children—someone is usually with them because of her medical conditions. (Tr. 57). She relies heavily on her husband who works from home and drives her to all her appointments and the grocery. (Tr. 56-57). She testified that she can cook some simple meals, do laundry, and wash the dishes. (Tr. 58, 65). She reported that she will perform a portion of a household chore, rest, and then return to complete the chore. (Tr. 58). During the day, Claimant stated that she watches television but experiences headaches if she looks at the screen for more than thirty minutes to an hour. (Tr. 65).

ALJ Isaacs issued an unfavorable decision on July 5, 2022. (Tr. 13-26). She applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since June 1, 2019, the alleged onset date. (Tr. 23). Second, Claimant has the following severe impairments: idiopathic scoliosis and kyphoscoliosis, coronary artery disease, benign paroxysmal positioning vertigo, migraines, and traumatic brain injury. (*Id.*). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 24). Between the third and fourth steps, ALJ Isaacs found

Claimant has the residual functional capacity ("RFC") to perform "light work" with the following non-exertional limitations:

> [C]an never climb ladders, ropes, and scaffolds. The claimant can only perform tasks requiring the judgment needed to perform simple, routine tasks. She cannot perform fast-paced work (such as work involving a quota that is hourly or more frequent). The claimant must avoid all commercial driving. She should avoid all exposure to hazards such as large, dangerous machinery and unprotected heights.

(Tr. 27). Fourth, Claimant is unable to perform any past relevant work. (Tr. 37). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (*Id.*). Based on this evaluation, ALJ Isaacs concluded Claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2019, through the date of her decision. (Tr. 38).

Claimant appealed ALJ Isaacs' decision. (Tr. 151-53). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Isaacs' decision. (Tr. 2). At that point, ALJ Isaacs' denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges ("ALJs") make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing she is disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

4

When reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the ALJ's decision is limited to an inquiry as to whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant identifies two issues with ALJ Isaacs' decision. First, Claimant argues that ALJ Isaacs failed to consider if Claimant's migraine headaches equaled a listing and did not include any limitations related to Claimant's migraines in her RFC determination. Second, Claimant asserts that ALJ Isaacs improperly evaluated the medical opinions of the State Agency physicians.

### A. ALJ Isaacs' Evaluation of Claimant's Severe Migraines

Claimant alleges ALJ Isaacs erred by finding Claimant's migraines were a severe impairment at step-two but then failing to evaluate them under Listing 11.02 at step-three and in her RFC determination. (DN 15, at PageID # 1087, 1101). Claimant, pointing to various treatment records, asserts that ALJ Isaacs' error is not harmless because sufficient evidence in the record establishes medical equivalence of all criteria in Listing 11.02B. (*Id.* at PageID # 1088).

The Commissioner argues that, although ALJ Isaacs did not specifically discuss Listing 11.02, she was not required to do so because her statement that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" was sufficient. (DN 20, at PageID # 1118). The Commissioner also asserts that Claimant does not medically equal all the criteria of Listing 11.02 because "she had only mild to moderate limitations in all areas of mental work-related functioning[.]" (*Id.* at PageID # 1120). Finally, the Commissioner points out that no medical source concluded that Claimant's impairments medically equaled a listed impairment, which prohibits ALJ Isaacs from finding that Claimant was disabled based on medical equivalence under Social Security Ruling ("SSR") 17-2p. (*Id.* at PageID # 1119 (citing SSR 17-2p, 2017 SSR LEXIS 2)).

Claimant's reply emphasizes that the Commissioner only lists the requirements of Listing 11.02D, but medically equaling the criteria of either Listing 11.02B or 11.02D leads to a disability determination. (DN 21, at PageID # 1131-32). Claimant asserts that she is not alleging that she medically equals Listing 11.02D; rather, the record contains evidence that she meets the criteria necessary to equal Listing 11.02B, which does not require a showing of marked limitations. (*Id.* at PageID # 1132). In addition, Claimant disagrees with the Commissioner's SSR 17-2p argument because, once ALJ Isaacs was aware of the evidence supporting the medical equivalence of Listing 11.02B, it was her, not Claimant's, responsibility to obtain medical expert testimony. (*Id.* at PageID # 1133).

Step-three of the sequential evaluation process requires the claimant prove she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1. 20 C.F.R. § 404.1520(a)(4)(iii); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In determining whether a claimant meets or equals a

listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). An ALJ "need not discuss listings that the [claimant] clearly does not meet[.]" *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). But, where "the record raise[s] a substantial question as to whether [the claimant] could qualify as disabled under a listing, the ALJ should discuss that listing." *Id.* (internal quotations omitted) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

If an ALJ fails to discuss a particular listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, the claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Foster*, 279 F.3d 348, 354-55 (6th Cir. 2001)). Merely pointing to evidence on which the ALJ could have based a listing finding will not suffice. *Sheeks*, 544 F. App'x at 641-42 (finding that claimant pointing to a few pieces of tenuous evidence addressing the listing did not raise a substantial question as to satisfying the listing).

Even when the claimant has shown a substantial question regarding whether she meets the requirements for a finding of disability at step-three, a discussion of why the claimant was not deemed disabled at step-three is not required if other portions of the ALJ's decision disclose the basis for rejecting such a result. SSR 17-2p, 2017 SSR LEXIS 2. When the ALJ discusses her reasoning elsewhere in her decision, then "a statement that the individual's impairment does not

medically equal a listed impairment constitutes a sufficient articulation for [the step three no-disability] finding." SSR 17-2p at *11, 2017 SSR LEXIS 2. Still, the ALJ's decision must be sufficiently clear to enable meaningful judicial review. *Reynolds*, 424 F. App'x at 416.

The Appendix of listed impairments does not include an entry for primary headache disorder. SSR 19-4p was enacted to fill this void and guide an ALJ's consideration of headache disorders in the sequential evaluation process. SSR 19-4p, 2019 SSR LEXIS 6. Pursuant to SSR 19-4p, an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.* at *16. The ruling identifies that the "most closely analogous listed impairment" for a medically determinable impairment of primary headache disorder is Listing 11.02 – Epilepsy. *Id.* Listing 11.02B, at issue here, requires proof of "dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)[.]" 20 C.F.R. Pt. 404, Subpt P, App'x 1, § 11.02B. Dyscognitive seizures are defined as "alteration of consciousness without convulsions or loss of muscle control" that may include "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances)[.]" *Id.* at § 11.00H(1)(b).

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ must consider:

> A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

8

*Id.* at *17.

At step-three, ALJ Isaacs did not analyze Claimant's headaches under Listing 11.02. Thus, the first issue is whether Claimant has established a substantial question regarding whether her condition is the medical equivalent of 11.02B. To show a substantial question, Claimant must point to specific evidence that reasonably establishes that her headaches: (1) occurred at least once a week for three months; (2) persisted despite adherence to prescribed treatment; and (3) constituted an "alteration of consciousness" type of event.

First, Claimant points to various treatment records establishing she suffered from headache events between 2017 and 2022. Although Claimant's neurologist noted that her "headaches got better around 2 years" after a 2017 motor vehicle accident, (tr. 930), several treatment notes reasonably support an inference that Claimant's headaches occurred each week over the course of three months. (*See, e.g.*, tr. 183 (March 18, 2021: daily headaches); tr. 1022 (August 18, 2021: daily headaches); tr. 213 (October 6, 2021: four to six headaches per week); tr. 930 (December 8, 2021: four headaches in November; already four headaches in December); tr. 930 (March 7, 2022: fifteen headaches per month); tr. 993 (March 22, 2022: four to five headaches per week); tr. 53 (April 28, 2022: four to five headaches per week)). Thus, there is a substantial question as to whether Claimant had at least one headache each week over the course of three months.

Second, ALJ Isaacs emphasized in her decision Claimant's gap in neurology treatment between August 29, 2018 and March of 2021. (Tr. 29). However, ALJ Isaacs failed to address the numerous medications Claimant has taken for her headaches including Naproxen, Nortriptyline, Sumatriptan, Rizatriptan, and Imitrex. (Tr. 215, 261, 766, 840). Nothing in the record suggests that Claimant has not been compliant in taking her prescribed medications. Although Claimant's therapist reported on September 15, 2021 that "her medication seemed to be helping with mood

9

and headaches[,]" (tr. 959), treatment records from a few months later document an increase in dosage for her migraine medications. (Tr. 1027). The inconsistencies in the few records that discuss her medications make their effectiveness unclear in light of Claimant's continuing headaches during the time in question. Thus, Claimant has established a substantial question on the issue of whether her symptoms persist despite adherence to prescribed treatment.

Finally, in support of her argument that her headaches cause the medical equivalent of the "alteration of consciousness" prong of Listing 11.02B, Claimant cites to her neurologist's report that, during a headache, Claimant "feels pressure in the back of head or around head or eyes" which "[v]aries in intensity from mild to severe" and is "[w]orse with bright lights and loud sounds." (Tr. 1022). Her consultative examiner's report from 2021, cited by Claimant, explains that her headaches "are sharp or pressure-like in nature, and occur around her temples, at the base of her head, or 'all over.'" (Tr. 766). These events require that she lie "in a dark, quiet room for relief." (*Id.*). Claimant described her pain as "very severe" and feeling as though her "head is being squeezed or smashed in a door." (Tr. 213). A treatment note from her primary care physician in 2021 reported that Claimant "hasn't worked in almost 2 years d/t depth perception issues, headaches, balance difficulties. Lost her job due to headaches r/t to TBI." (Tr. 782). In a 2022 report, Claimant stated that she experiences weekly dizzy spells and headaches at the same time. (Tr. 993). Other courts in this Circuit have found that evidence of similar symptoms raises a substantial question about whether a claimant's headaches medically equal the "alteration of consciousness" element. *See, e.g.*, *Willis v. Comm'r of Soc. Sec.*, No. 2:19-cv-11689, 2020 U.S. Dist. LEXIS 70586, at *18-19 (E.D. Mich. Apr. 21, 2020); *Mills v. O'Malley*, No. 6:23-CV-156-HAI, 2024 U.S. Dist. LEXIS 6713, at *14-16 (E.D. Ky. Jan. 12, 2024). ALJ Isaacs could have

concluded that Claimant's headaches constituted an alteration of consciousness sufficient to meet SSR 19-4p's standard had she undertaken such an inquiry.

The record evidence discussed above suggests that Claimant's migraine impairment may have equaled Listing 11.02B for at least a period of time and warranted discussion by ALJ Isaacs under SSR 19-4p. Therefore, Claimant included enough evidence in the administrative record to raise a substantial question over whether her headaches were the medical equivalent of Listing 11.02B.

The second issue is whether ALJ Isaacs' decision is sufficient to disclose her rationale for rejecting Claimant's assertion of *per se* disability at step-three based on her headaches. At step-four of her decision, ALJ Isaacs analyzed Claimant's headaches as follows:

> With regard to the claimant's headaches, records dated August 18, 2021, state that the claimant's headaches began in 2017 following a motor vehicle accident (Exhibit 17F at 1). She reported that these headaches got better after approximately 2 years, which is close to the time of alleged onset date, but had worsened in the last 2 months (Exhibit 17F at 1). At this time, she reported 15 headache days a month (Exhibit 17F at 1). Records from March of 2022 indicate 4 headache days per month (Exhibit 13F at 1).

(Tr. 31). ALJ Isaacs' brief discussion of Claimant's headaches leaves the Court without the ability to meaningfully review whether her conclusions are supported by substantial evidence. Indeed, although ALJ Isaacs discussed the frequency of Claimant's headache events, she merely summarized three reports by Claimant of her headache frequency, rather than explaining whether or not these reports supported a finding of medical equivalency. Moreover, ALJ Isaacs failed to reference any other records noting the frequency of her headaches throughout 2021. It is unclear from a review of the remainder of ALJ Isaacs' decision to what extent, if any, she considered the other criteria set forth in SSR 19-4p relevant to medical equivalence with Listing 11.02B. Therefore, ALJ Isaacs' failure to consider whether Claimant's migraines were medically equal to

11

Listing 11.02B is not harmless. *Smith-Johnson*, 579 F. App'x at 433 n.5 ("If a substantial question is raised, then it cannot be harmless error since the claimant could have been found disabled.").

Contrary to the Commissioner's argument, the fact that the record does not contain any of the evidentiary requirements under SSR 17-2p does not excuse ALJ Isaacs' error at step-three. SSR 17-2p states:

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> 1. A prior administrative medical finding from [a federal or State Agency medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearing level supporting the medical equivalence finding, or
>
> 3. A report from the AC's medical support staff supporting the medical equivalence finding.

2017 SSR LEXIS 2, *6-7. To assist evaluation of this issue, the ruling states that, at the hearing level, an ALJ "may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)." *Id.* at *6. The ruling further explains that, if the ALJ believes that the evidence does not reasonably support a finding that the individual's condition medically equals a listed impairment, "we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *10. Other courts have interpreted this ruling to place the responsibility of obtaining expert evidence on the ALJ, not the claimant. *See, e.g.*, *Morris v. Comm'r of Soc. Sec.*, Civil Action No. 18-12702, 2019 U.S. Dist. LEXIS 140858, at *9 (E.D. Mich. Aug. 2, 2019) ("[I]f the evidence does 'reasonably support' a finding of equivalence, the ALJ should seek a medical opinion."); *Freeman v. Kijakazi*, No. 8:22-cv-683-SPF, 2023 U.S. Dist. LEXIS 40860, at *11 (M.D. Fla. Mar.

12

10, 2023) ("Indeed, the ruling does seem to contemplate the ALJ obtaining expert evidence."). This Court refuses to penalize Claimant when the proper exercise of the ALJ's discretion favored additional medical evidence.

The record evidence on severity, frequency, and adherence merited, at least, an express consideration of Listing 11.02B and a more robust explanation of equivalency, if not also a medical expert's opinion on Listing 11.02B equivalence. Because Claimant has raised a substantial question that her impairment medically equals Listing 11.02B, ALJ Isaacs' error is not harmless. For these reasons, the Court finds that ALJ Isaacs' failure to evaluate Claimant's migraines under Listing 11.02B in her step-three analysis is reversible error and the case must be remanded for additional consideration. The Court cautions, however, that, in so finding, it is not expressing an opinion as to whether Claimant will ultimately be able to demonstrate that she equals the listing as it is not the Court's place to be the first to determine whether Claimant does or does not suffer from a primary headache disorder pursuant to SSR 19-4p.

### B. ALJ Isaacs' RFC Determination

Claimant also mounts other challenges to ALJ Isaacs' RFC determination, including her evaluation of the State Agency physicians' opinions and whether the RFC is supported by substantial evidence. (DN 14, at PageID # 1074-76). Because the Court has already determined that remand is necessary as to ALJ Isaacs' failure to evaluate Listing 11.02B, there is no need to proceed with adjudicating the remaining issues in Claimant's Fact and Law Summary.

### IV. Order

For the foregoing reasons, the Court finds the decision of the Commissioner is not supported by substantial evidence. **IT IS THEREFORE ORDERED** that ALJ Isaacs' decision is **REVERSED** and the case is **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for

13

further proceedings consistent with the opinion. On remand, the ALJ shall hold a new hearing and issue a new decision, *de novo*. This is a final and appealable Order and there is no just cause for delay.

Copies: Counsel